## DANIEL VS. ROPER.

The bill in this case charges that the defendant reduced the plaintiff to slavery, and that she was compelled to bring a suit whereby, after a protracted litigation, she regained her freedom; that when the defendant reduced the plaintiff to servitude he took from her certain personal property; that she brought an action of trover therefor, soon after the judgment was rendered whereby she was finally liberated from slavery: that the defendant offers to plead the statute of limitation at law, from which she prays that he may be injoined: *Held*, that it appearing that the plaintiff recovered her liberty on the ground that she belonged to the white race, the claim of the defendant to hold her in servitude is no excuse to the plaintiff for not bringing her suit at law within the period of limitation.

The judgment in the suit for freedom having decided the fact that the plaintiff is a white woman, it follows that she was never under any disability to sue by reason of the claim preferred by defendant that she was his slave.

Neither her bondage before the institution of the action of trover, nor the restraint by being hired out under the direction of the court pending her suit for freedom, prevented her from bringing her action of trover for damages sustained by reason of the unlawful conversion of her property.

Nor is the alleged fact that she was advised by her counsel not to bring the action of trover until her suit for freedom should be decided, such an excuse for her failure to sue as will displace the statute bar.

*Appeal from Ashley Circuit Court in Chancery.*

JOHNSTON and HUTCHINSON for appellant.

The plea of the statute of limitations is admissible in all cases, both in law and equity, where the facts support it; and will not be disallowed on account of any supposed odiousness to it in the particular case.

During the pendency of the appellee's suit for freedom, she was a free woman, and might at any time have brought her suit in trover; and as by her laches she has permitted the statute bar to become complete, she must bear the loss.

WADDELL, and GARLAND & RANDOLPH, *contra.*

It is well settled that a slave cannot sue except for freedom. 9 *Lou. Rep.*, 156; 2 *Swan's Tenn. Rep.*, 149. And during the pendency of the appellee's suit for freedom, she was treated as a slave, was to all intents and purposes a slave—was hired out—had no civil rights, and therefore could not sue for the infringement of them. Then had she sued, her suit would have been dismissed. 2 *Swan's Rep.*, 159.

As the statute of three years had run before she could commence her suit, to permit Daniel to have the benefit of the statute would be unjust, and a taking advantage of his own wrong; and in such cases equity will interfere. *Eden on Injunctions, by Waterman*, 14; *Story's Eq.*, secs. 903-1521; *Drewry on Inj.*, 320.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

By bill preferred on the chancery side of the Ashley circuit court, Abby Roper represented that, about January, 1856, Daniel, the defendant, took her and her children into custody, claiming them as his slaves; that to obtain relief from the illegal bondage extended over them, they instituted legal proceedings under the statute of this state allowing persons held in slavery to sue for their freedom, returnable to the April term, 1856, of the circuit court of Ashley county, that the proceedings were protracted by appeals to the supreme court, change of venue or mis-trial, till the January term, 1861, of the supreme court, when the judgment of the Drew circuit court, liberating the plaintiff and her children, was affirmed, and they thus finally obtained the freedom to which they were entitled, and of which they were deprived by the defendant. The bill also charges that when the defendant reduced her and her children to slavery, he took from her two mares and a colt, a yoke of oxen and a cart, which were property of her own acquisition, and to which the defendant had no title, and made no claim of any, only that as acquired by her, and she being a slave, it belonged to him; that she sued for the property at the first court after she could do so after the final

decision of the supreme court; that this suit, an action of trover, against the defendant, was then pending in the circuit court of Ashley county; and that the defendant, after having kept her in slavery during the period of litigation, has the hardihood to plead the statute of limitations of three years to her action; that she is advised the case does not present ·itself within any exception of the statute, but from the defense being against equity, she asks that he be enjoined from interposing the plea.

The bill was presented to the court. The judge, from having advised the plaintiff in relation to the action of trover mentioned in the bill, declined to preside in the case, and under the provisions of the constitution of 1861, a special judge was selected from among the attorneys present, who qualified and took jurisdiction of the case. No demurrer or motion was filed to the bill, but it was immediately taken up by the court; and by the consent of the defendant, as we must suppose, as the order of the court states that argument of counsel on behalf of both parties was heard by the court. Notwitstanding the intormality of the proceedings, we shall consider the case as if it were regularly set down for hearing upon bill and answer, or upon demurrer to the bill, as the parties evidently considered that the refusal or grant of injunction as to the use of the plea of limitations in the action of trover, was the only point in the case, and approached it without the formality of technical pleadings and orders. With the same promptness that characterized the whole proceeding, the defendant, when the court awarded the injunction, subject to the bond required by statute being given, took his preliminary order as a decree disposing of the whole of the case, and without showing a disposition to wait further, or wait for the bond to be given, elected to consider it as a final decree, and prayed an appeal to this court. We shall make no objection to the consideration of the case, on account of the manner in which it is presented to the court, but shall proceed to the determination of the only matter involved in it; that is, whether the claim made by the defendant over the plaintiff and her children as his slaves, is an excuse to

the plaintiff for not bringing her suit at law for the property taken from her by the defendant, within three years from the time of its taking or conversion.

Although the bill does not state whether the plaintiff is a white woman, of Indian blood, or of pure or mixed African descent, it alleges she is the person whose case, under the name of Abby Guy, was twice before this court, and at each time she was one of the appellees, and Daniel, the present defendant, was the appellant. The case is reported in 19 *Ark.*, 137, where the evidence adduced upon the trial in Ashley county is set out at large, and in 23 *Ark.*, 50. In the last case the opinion of the court mentions the appellees as having the appearance of belonging to the white race, and of having for many years acted and been treated as a free person. This is a statement of the effect of the testimony as given on the trial in Drew county, while the detailed testimony of the first trial given in the report of the case in 19 *Ark.*, shows that Abby Guy and her children claimed to be free persons solely from belonging to the white race.

Then taking the plaintiff to be what, throughout her protracted litigation with the defendant, she claimed to be, what the juries of two counties found her to be, a white woman and a free person, she was never under any disability to sue from the time the defendant took, and converted to his own use, the property specified in the bill. For the mere claim that a white, or a free person is a slave, a resort to our statutory mode of procedure by the person claimed to be a slave, the bondage before suit and the restraint by being hired out under the direction of the court, while the suit is going on, do not make a person a slave, as the case of this plaintiff and her children abundantly proves.

Nor did the asserted claim of Daniel over Abby Guy, prevent her from beginning her action of trover, or other appropriate action, for the recovery of the property taken from her by Daniel, or for its value, as soon as he took it from her by force, or when he converted it to his own use. Because she was wrongfully subjected to bondage, and obliged to sue as a pauper to be freed

from it, she was not deprived of the ownership of property, or of her right to sue for its conversion. If that were the law, Daniel, or any evil disposed person might claim the whitest, the purest blooded and richest man of the land as his slave, reduce him to a state of slavery, take all his property from him, hold it while the litigation about the right to freedom was proceeding, and so long that the law of limitation would give him the property against any legal claim that the rightful owner could make after the courts had pronounced upon his right to freedom.

But even without adverting to the Abby Guy cases, upon the case made in the bill by Abby Roper, the same conclusion must be reached. The plaintiff does not state whether she is a white or a black woman, or of mixed blood, but she does charge that the defendant wrongfully extended a claim over her and held her in slavery, and that he took from her property of her own acquisition. She must, then, have been acting under the claim of being a free person, must have been recognized and treated as such by others; for otherwise she could not have accumulated horses and oxen. No free person, white or black, can be deprived of the right to appeal to the courts for the restoration, or for the value of his property, because it may be taken from him by violence, and because the wrong doer adds wrong to wrong by falsely claiming the owner of the property to be his slave. The injured person may, at the same time, sue for his property and sue for his freedom, if his adversary have the power to put him under restraint or hold him unlawfully. Commonly, those that sue for freedom are of the African race, in whole or in part, have been held in slavery, and claim their freedom from their ancestors or themselves having been kidnapped, or from being entitled to emancipation by the acts of former owners. In such cases, the claimants to freedom remain in a state of slavery, can have no property to call their own, have not the legal standing to enable them to bring any suit except to claim the right to freedom. But Abby Guy's case was far different from such cases. She must be likened to persons in the enjoyment of freedom, not to those in

the condition of slavery, though claiming freedom and perhaps entitled to it. She could have sued Daniel for her property when she and her children sued for themselves. If she had been able to have withstood Daniel without the assistance afforded by the act under which she sued, she, like any other white person, restrained of liberty, could have sued Daniel in trespass for false imprisonment without alleging that she was free but held in slavery, and could have recovered damages according to her proof, and according to the law administered between free persons in like controversies: always supposing juries to find her condition to be as found by the two juries who affirmed her right to freedom.

The plaintiff alleged in her bill that she was anxious to have sued Daniel for her property, while her suit for freedom was pending, but that her counsel would not bring the suit, on the ground that she had no right to sue till her freedom should be won. If this be so, it is not the first time that this court has been obliged to differ from opinions that have been given by counsel upon the subject of litigation; but mistaken advice, though injurious to the interests of the client, may not cause the courts to swerve from the correct administration of the law.

Holding that the bill has made no case to avoid the plea of limitations apprehended in the plaintiff's action of trover, we reverse the decree without expressing any opinion upon the question mainly argued by her counsel that it is within the province of a court of equity to prevent a defendant in a suit at law from relying upon the plea of limitations. The case must be remanded to the circuit court of Ashley county setting in chancery with instructions to set aside the order for an injunction and to dismiss the bill.